UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

KENNETH J. SCHAEFER, Jr.                             Case No. 14-27431-JKO
MARIA AGUDELO-SCHAEFER,                               Chapter 7

              Debtor(s).
_____/

**TRUSTEE'S MOTION FOR AN ORDER (I) AUTHORIZING THE SALE OF 544 SW 183RD WAY, PEMBROKE PINES, FL 33029, FREE OF LIENS, CLAIMS ENCUMBRANCES OR INTERESTS PURSUANT TO 11 U.S.C. §363; (II) APPROVING CONTRACT OF SALE; (III) APPROVING FORM AND MANNER OF NOTICE; AND (IV) APPROVING SURCHARGE OF COLLATERAL**

Kenneth A. Welt, the Chapter 7 Trustee (the *"Trustee"*) of the bankruptcy estate of KENNETH J. SCHAEFER, Jr. and MARIA AGUDELO-SCHAEFER (the *"Debtors"*), hereby requests entry of an Order (i) authorizing the sale of 544 SW 183rd Way, Pembroke Pines, FL 33029, free of liens, claims encumbrances or interests pursuant to 11 U.S.C. §363; (ii) approving contract of sale; (iii) approving form and manner of notice; and (iv) approving surcharge of collateral, and states:

<div align="center">

**CONCISE STATEMENT**

</div>

| | |
|---|---|
| **General Description:** | Sale of 544 SW 183rd Way, Pembroke Pines, FL 33029 |
| **Date:** | As agreed between Trustee and purchaser |
| **Location:** | 544 SW 183rd Way, Pembroke Pines, FL 33029 |
| **Format:** | Private sale open to the Public |
| **Terms:** | As is, Where is |
| **PII:** | No Personally Identifiable Information will be sold. |
| **Objection Deadline:** | Two days prior to the attached Notice of Hearing |
| **Hearing Date:** | See attached Notice of Hearing |

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8701/8701-1/01540318.DOCX.}

## BACKGROUND

1.      On July 31, 2014 (the **"Petition Date"**), the Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Subsequently, the Trustee was duly appointed Chapter 7 Trustee.

2.      As of the Petition Date, the Debtors were the record owner of

>   **Property Address**:
>
>   544 SW 183rd Way, Pembroke Pines, FL 33029
>
>   **Legal Description:**
>
>   LOT 27, of SILVER LAKES AT PEMBROKE PINES PHASE II RESIDENTIAL PARCEL L, according to the Plat thereof as recorded in Plat Book 153, Page 13, of the Public Records of Broward County, Florida

(the **"Property"**)

3.      The Property is listed as an asset on the Debtors' Schedule A. The Debtors own the Property as husband and wife, but did not claim the Property as exempt. Therefore, the Property is property of the estate.

4.      The Property is encumbered by a first-mortgage lien (the **"Chase Lien"**) of JP Morgan Chase, N.A. (**"JPMC"**). The Chase Lien was reduced to a Consent Final Judgment of Foreclosure (the **"Foreclosure Judgment"**) on or about April 8, 2014. Prior to the foreclosure sale, the Debtors filed the petition, staying the sale. Pursuant to the Foreclosure Judgment, JPMC is owed $260,665.90, plus post-judgment interest since the entry of the Foreclosure Judgment.

5.      Silverlakes Community Association, Inc., and Coconut Cove Recreation Association, Inc., may also have *de minimis* liens against the Property, which do not appear to exceed $2,500.00 in total. The Property may also be impaired by unpaid property taxes of

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8701/8701-1/01540318.DOCX.}

approximately $9,000.00. Thus, the total amount of encumbrances against the Property is approximately $273,000.00.

6.      On August 19, 2014, the Court entered orders permitting the Trustee to solicit offers for the purchase of the Property and authorizing the retention of Michael Mehdipour  (the "***Broker***") as real estate broker to the estate. [ECF Nos. 18 & 19].

7.      The Broker marketed the Property, ultimately leading to the offer of IH5 Property Florida, LP ("***IH5***") to purchase the Property for $320,000.00 (the "***IH5 Offer***"). The IH5 Offer exceeds the total amount of the encumbrances which encumber the Property.

## THE IH5 OFFER

8.      The Trustee believes that the highest and best value for the Property has been generated through the marketing of the Property, and that it is in the best interest of the estate to sell the Property pursuant to the IH5 Offer. Pursuant to the IH5 Offer, IH5 will purchase the Property for $320,000.00, with all due diligence and inspection periods already having passed as of the filing of this motion. A Copy of the contract (the "***IH5 Contract***") for the purchase and sale of the Property, which embodies the IH5 Offer, is attached as **Exhibit A**.

9.      In order to effect this agreement, the Broker and the procuring cause broker, Gabriel Koch, have agreed, pursuant to the IH5 Contract, to reduce their commissions to 2.5% each, despite having been approved a commission of 3% each pursuant to this Court's order. [ECF No. 19].

## RELIEF REQUESTED

### A. Approval of the sale.

10.     By this Sale Motion, the Trustee seeks the Court's approval of a sale, pursuant to Section 363(b) and (f), of the Property. Pursuant to Fed.R.Bankr.P. 6004(f)(1), "sales not in the ordinary course of business may be by <u>private sale</u> or by public auction." (emphasis added). The Trustee submits that the Property has been marketed in a commercially reasonable manner, and approval of the sale is in the best interest of the Estate as a whole.

### B. Sale free and clear.

11.     The Trustee seeks to sell the Property free and clear of liens, claims and encumbrances but subject to: comprehensive land use plans, zoning restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; outstanding oil, gas and mineral rights of record without right of entry; and unplatted public utility easements of record or taxes for year of closing and subsequent years.

12.     Section 363(f) of the Bankruptcy Code authorizes the Trustee to sell property of the estate free and clear of any liens, claims or encumbrances if one of the following is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

13.     The language of Section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any of the aforementioned conditions are met. *In re Heine*, 141 B.R.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8701/8701-1/01540318.DOCX.}

185, 189 (Bankr. D.S.D. 1992); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). The Trustee asserts that since the sale price exceeds the aggregate value of the liens and encumbrances against the Property by approximately $47,000.00, section 363(f)(3) authorizes the sale free and clear of all interests, liens, claims, and encumbrances.  Additionally, other than the Chase Lien, any other secured creditor could be forced to accept a money satisfaction in a foreclosure of the Chase Lien,[1] and to the extent there are any liens or encumbrances other than the those set forth in paragraphs 4 or 5 of the Motion, there would be a bona fide dispute as to the validity of such liens.

14.     The Trustee submits that the sale should be free and clear of all liens, claims and encumbrances, with any such liens, claims or encumbrances to attach to the proceeds of the sale. The sale satisfies the requirements of Section 363(f)(3), (f)(4) or (f)(5) of the Bankruptcy Code. Thus, a sale free and clear is proper.

**C.  Approval of form and manner of notice of sale**

15.      Pursuant to Bankruptcy Rule 2002(a), the Trustee is required to provide creditors with 21 days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested. The Trustee has served or will serve this sale motion on all creditors and the Office of the United States Trustee. The Trustee seeks a finding that such notice is sufficient under the Federal Rules of Bankruptcy Procedure and the circumstances.

16.     The Trustee will have provided notice of the sale to all creditors and interested parties while the Broker will have extensively marketed the Property. The Trustee submits that the result of the sale will be a fair and reasonable market price.

---

[1] *See In re Levitt & Sons, LLC*, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008)

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8701/8701-1/01540318.DOCX.}

**D.  Approval of Surcharge.**

17.     The Chase Lien should be surcharged $31,000.00 for the Trustee's expenses in selling the Property.

18.     To "surcharge collateral, a [trustee] must demonstrate that the secured creditor expressly or impliedly consented to the expense or, absent such consent, that (a) the expenditure was necessary; (b) the amount expended was reasonable; and (c) the secured creditor benefited from the expenditure. In *re A.B.A. Fire Equip., Inc.,* 11-35796-BKC-AJC, 2012 WL 2564468 (Bankr. S.D. Fla. July 2, 2012) (emphasis added) (citing *In re Spa at Sunset Isles Condominium Assoc, Inc*., 454 B.R. 898, 906 (Bankr.S.D.Fla.2011)).

19.     The requirements are disjunctive in that, if there is consent, none of the elements of necessity, reasonableness, and benefit need be proven. Conversely, if there is necessity, reasonableness, and benefit, consent need not be present.

i.   The expenses of the Trustee, his attorney, and the Broker were necessary.

20.     In this case, the only asset being administered is the Property. To realize the value, the Trustee had to obtain the services of a real estate broker, as would JPMC (or any other entity seeking to sell real property). Additionally, The Trustee was required to obtain Court approval of the sale pursuant to 11 U.S.C. § 363(b), and thus the employment of an attorney was necessary. Finally, the Trustee's services to the Estate, in considering and accepting an offer for the sale of the Property, were required pursuant to 11 U.S.C. § 704(a)(1), and (2). Thus, the Trustee's services are necessary.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8701/8701-1/01540318.DOCX.}

ii. The expenses of the Trustee, his attorney, and the Broker were reasonable.

21. The Broker's fee for the sale of the Property of 6% is standard in the industry, and was approved by this Court. Additionally, the total fee was reduced from 6% to 5%, for a total of $16,000.00. Accordingly, the Broker's fee is reasonable.

22. The Trustee's attorney expects the total attorney fees incurred in obtaining authorization of the sale is approximately $5,000.00. The Trustee's attorney's services are billed at $295.00 per hour, which is standard in this district. Accordingly, the Trustee's attorney fees are reasonable.

23. Finally, the Trustee's fee for administering a $320,000.00 asset is set pursuant to 11 U.S.C. § 326 at $19,250.00. Thus, by statute, the fee is reasonable.

iii. The expenses benefitted JPMC.

24. The expenses benefitted JPMC. If JPMC had sought to foreclose, they would likely have taken title back at the foreclosure sale. Bank owned properties sell for as much as 20% less ($64,000.00 on a $320,000.00 Property) than market sales.[2] The trustee's ability to sell the Property free and clear, however, in addition to the Broker's market-standard efforts to market the Property, result in a sale at or above market value. Moreover, JPMC would have been required to employ a broker to sell the Property, for which the standard rate in the area is 6%, or approximately $19,000.00. Finally, the Trustee submits that the attorney fees incurred in obtaining stay relief, resetting the foreclosure sale, and taking back title, would equal or exceed the Trustee's attorney fees. Thus, if the JPMC foreclosed, it is likely that it would realize only

---

[2] Lee, K. 2010. *Examining REO sales and price discounts in Massachusetts. REO and Vacant Properties: Strategies for Neighborhood Stabilization. Washington D.C.*: Federal Reserve Bank of Boston and Cleveland and the Federal Reserve Board, 55.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8701/8701-1/01540318.DOCX.}

approximately $231,000.00 of the approximately $262,000.00 owed. Thus, the benefit to JPMC is approximately $31,000.00.

25.      Accordingly, JPMC is benefitted by the sale and the expenses incurred by the Trustee. The Trustee's expenses to be surcharged amount to approximately $12,000.00 more than the cost of a standard-rate real estate broker, which the Trustee submits is more than set off by the higher sale price the Trustee is able to generate. Thus, the Court should approve the $31,000.00 surcharge.

WHEREFORE, the Chapter 7 Trustee, Kenneth A. Welt, respectfully requests the entry of an Order: (i) authorizing the sale of 544 SW 183rd Way, Pembroke Pines, FL 33029, free of all liens, claims, encumbrances or interests pursuant to 11 U.S.C. §363(f); (ii) approving the contract of sale; (iii) approving form and manner of notice; (iv) approving the $31,000.00 surcharge of the Chase Lien, and  (v) for such other and further relief as this Court deems just and proper.

Dated: December 5, 2014.

s/ Lawrence E. Pecan
Lawrence E. Pecan, Esquire
Fla. Bar No: 99086
LPecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for the Trustee*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8701/8701-1/01540318.DOCX.}

## "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

1\* **PARTIES:** <u>Trustee Kenneth A. Welt, for the estate of Schaefer, Kenneth J. Jr. & Schaefer Maria</u> ("Seller"),

2\* and <u>IH5 Property Florida, L.P., A Delaware Limited Partnership</u> ("Buyer"),

3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property

4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase and

5  any riders and addenda ("Contract"):

6  **1. PROPERTY DESCRIPTION:**

7\*    (a) Street address, city, zip: <u>544 SW 183RD WAY, Pembroke Pines FL 33029</u>

8\*    (b) Property is located in: <u>Broward</u> County, Florida. Real Property Tax ID No.: <u>514018110270</u>

9\*    (c) Real Property: The legal description is<u>                                                              </u>

10   <u>¤SILVER LAKES AT PEMBROKE PINES PHASE II RESIDENTIAL PARCEL-L 153</u>

11

12   together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached

13   wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms

14   of this Contract.

15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which

16   are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase:

17   range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and

18   draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access

19   devices, and storm shutters/panels ("Personal Property").

20\*   Other Personal Property items included in this purchase are: <u>washer, dryer</u>

21

22   Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.

23\*   (e) The following items are excluded from the purchase:<u>                                                   </u>

24   <u>                                                                                              </u>

25   <center>PURCHASE PRICE AND CLOSING</center>

26\*  **2. PURCHASE PRICE** (U.S. currency):.................................................................$   <u>320,000.00</u>

27\*    (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ...........$   <u>5001.00</u>

28    The initial deposit made payable and delivered to "Escrow Agent" named below

29\*    **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within <u>5</u> (if left blank,

30    then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)

31    SHALL BE DEEMED SELECTED.

32\*    Escrow Agent Information: Name: <u>Trident Title</u>

33\*    Address: <u>7975 NW 154th St. Suite 220, Miami FL 33016</u>

34\*    Phone: <u>(305)351-9376</u>   E-mail:<u>mbecerra@tridenttitlellc.co</u>Fax:<u>              </u>

35\*    (b) Additional deposit to be delivered to Escrow Agent within <u>            </u> (if left blank, then 10)

36\*    days after Effective Date...............................................................................$ <u>              </u>

37    (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")

38\*    (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8...........$ <u>              </u>

39\*    (d) Other:<u>                                                          </u>.....................$ <u>              </u>

40    (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire

41\*    transfer or other **COLLECTED** funds.........................................................$ <u>Balance</u>

42    NOTE: For the definition of **"COLLECTION"** or **"COLLECTED"** see STANDARD S.

43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFER; EFFECTIVE DATE:**

44\*    (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before <u>          </u>

45\*    <u>                                </u>, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to

46    Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the

47    counter-offer is delivered.

48    (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed

49    and delivered this offer or final counter-offer ("Effective Date").

50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur and

51    the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on

52\* <u>14 days upon entry of court order</u> ("Closing Date"), at the time established by the Closing Agent.

53  **5. EXTENSION OF CLOSING DATE:**

54    (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA) notice

55    requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to

56    exceed 7 days.

Buyer's Initials <u>MH</u>          Page 1 of 11          Seller's Initials <u>        </u>

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors®and The Florida Bar.  All rights reserved.

Serial#: 028402-400141-3289429

formsimplicity

**EXHIBIT A**

57 (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i)
58 disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance,
59 to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration
60 of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or
61 Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred
62* within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by
63 delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and
64 Seller from all further obligations under this Contract.

65 **6. OCCUPANCY AND POSSESSION:**
66 (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
67 Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
68 personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
69 codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the
70 Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be
71 deemed to have accepted the Property in its existing condition as of time of taking occupancy.
72* (b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is
73 subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts
74 and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be
75 delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the
76 lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of
77 written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be
78 refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel
79 Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied
80 by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

81* **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this
82* Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

83 **FINANCING**

84 **8. FINANCING:**
85* ☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to
86 Buyer's obligation to close .
87* ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA ☐ VA
88* or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 30) days after
89* Effective Date ("Loan Commitment Date") for **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
90* the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing
91* rate based upon Buyer's creditworthiness), and for a term of _____(if left blank, then 30) years ("Financing").

92* Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective
93 Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment")
94 and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage
95 loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such
96 status and progress to Seller and Broker.
97
98 Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not
99 receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract **up to the**
100 **earlier of:**
101 (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected to
102 waive the financing contingency of this Contract; or
103 (ii.) 7 days prior to Closing Date.

104 If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms of
105 this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under
106 this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8, then this financing
107 contingency shall be deemed waived by Buyer.

108 If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the
109 Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the
110 Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3)
111 appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the
112 loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer,
113 thereby releasing Buyer and Seller from all further obligations under this Contract.

Buyer's Initials _____ M A _____                Page 2 of 11                Seller's Initials _____ N _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 028402-400141-3289429

*formsimplicity*

114* ☐ (c) Assumption of existing mortgage (see rider for terms).

115* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

116 **CLOSING COSTS, FEES AND CHARGES**

117 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

118 (a) **COSTS TO BE PAID BY SELLER:**

119 • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
120 • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)    • Recording and other fees needed to cure title
121 • Title search charges (if Paragraph 9(c) (iii) is checked)    • Seller's attorneys' fees
122* • Other:_____

123    If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a
124    sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If
125    actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual
126    costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

127 (b) **COSTS TO BE PAID BY BUYER:**

128 • Taxes and recording fees on notes and mortgages    • Loan expenses
129 • Recording fees for deed and financing statements    • Appraisal fees
130 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
131 • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
132 • Lender's title policy and endorsements    • All property related insurance
133 • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
134      9 (c) (iii) is checked.)
135* • Other:_____

136* (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 5) days prior to Closing Date, a title
137    insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
138    exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
139    STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance
140    covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
141    The owner's title policy premium, title search, municipal lien search and closing services (collectively, "Owner's
142    Policy and Charges") shall be paid, as set forth below
143    **(CHECK ONE):**

144* ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for
145    closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid
146    by Buyer to Closing Agent or such other provider(s) as Buyer may select); or

147* ☒ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
148    services related to Buyer's lender's policy, endorsements, and loan closing; or

149* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy of
150    title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which
151    is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien
152    search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if
153*    applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____ (if left blank,
154    then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

155 (d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and
156    certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall
157    be furnished to Buyer and Closing Agent within 5 days after Effective Date.

158* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
159* _____ at a cost not to exceed $_____. A home
160    warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
161    appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

162 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
163    ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
164    ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
165    improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed
166    on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in
167    installments **(CHECK ONE):**

168* ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
169    Installments prepaid or due for the year of Closing shall be prorated.

170* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

171 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

Buyer's Initials _M_ _H_      Page 3 of 11      Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 028402-400141-3289429

formsimplicity

172    This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD)
173    pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

174 <div align="center">**DISCLOSURES**</div>

175    **10. DISCLOSURES:**

176      (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient
177      quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal
178      and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon
179      testing may be obtained from your county health department.

180      (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
181      does not know of any improvements made to the Property which were made without required permits or made
182      pursuant to permits which have not been properly closed.

183      (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
184      desires additional information regarding mold, Buyer should contact an appropriate professional.

185      (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone
186      the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving
187      the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal
188      Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service
189      under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and /or flood insurance
190      rating purposes is below minimum flood elevation or is ineligible for flood insurance through the National Flood
191*      Insurance Program, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left
192      blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
193      Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and
194      flood zone designation of Property. The National Flood Insurance Reform Act of 2012 (referred to as Biggert-
195      Waters 2012) may phase in actuarial rating of pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures
196      (residential structures in which the insured or spouse does not reside for at least 80% of the year) and an elevation
197      certificate may be required for actuarial rating.

198      (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
199      required by Section 553.996, F.S.

200      (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
201      mandatory.

202      (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
203      **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY**
204      **DISCLOSURE, IF APPLICABLE.**

205      (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
206      PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
207      PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
208      IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
209      PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY
210      PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

211      (i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the
212      Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may
213      require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or
214      prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent
215      that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller
216      are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and
217      withholding requirements pursuant to FIRPTA.

218      (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not
219      readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence,
220      Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to
221      the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no
222      written or verbal notice from any governmental entity or agency as to a currently uncorrected building,
223      environmental or safety code violation.

224 <div align="center">**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**</div>

225    **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property,
226    including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS
227    Maintenance Requirement").

Buyer's Initials _M_ _H_      Page 4 of 11      Seller's Initials _W_ _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 028402-400141-3289429

formsimplicity

7

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __XX__ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.**

Buyer's Initials _____  Page 5 of 11  Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 028402-400141-3289429

formsimplicity

Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**

   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

   (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

   (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

   (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f)

Buyer's Initials _MH_        Page 6 of 11        Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

formsimplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

345 assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none
346 prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b)
347 – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable
348 Title Standards adopted by authority of The Florida Bar and in accordance with law.
349 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in
350 writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered
351 to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to
352 examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's
353 notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to
354 have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with
355 proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if
356 Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects
357 within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a)
358 extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use
359 reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with
360 existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days
361 after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and
362 receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If
363 after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this
364 Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all
365 further obligations under this Contract.
366 **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach
367 on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental
368 regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters,
369 together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer
370 timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title
371 defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's
372 request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the
373 extent the affirmations therein are true and correct.
374 **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the
375 Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
376 **D.  LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
377 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits
378 paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same
379 information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may
380 thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any,
381 differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s)
382 fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such
383 information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit,
384 thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and
385 assign all leases to Buyer who shall assume Seller's obligations thereunder.
386 **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement,
387 claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real
388 Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within
389 that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors,
390 subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general
391 contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs
392 which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.
393 **F.  TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.**
394 Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
395 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a
396 Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is
397 located) of the next business day.
398 **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable
399 to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
400 prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
401 transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer
402 or Seller, and which, by:  exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to
403 prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure
404 prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance

Buyer's Initials _M H_           Page **7** of **11**           Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 028402-400141-3289429

formsimplicity

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H.   CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i)   **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

(ii)  **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood elevation certification, and documents required by Buyer's lender.

(iii) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

Buyer's Initials _____ M H_____   Page **8** of **11**   Seller's Initials _____ / _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 028402-400141-3289429

formsimplicity

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract .

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.

(i)    No withholding is required under Section 1445 if the Seller is not a "foreign person," provided Buyer accepts proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller, signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)   If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum, if any required, and timely remit said funds to the IRS.

(iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv)   In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

Buyer's Initials _____    Page 9 of 11    Seller's Initials _____

### STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

525 (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288
526 and 8288-A, as filed.
527 **W. RESERVED**
528 **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller and*
529 *against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
530 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
531 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
532 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
533 *Closing.*

534 ### ADDENDA AND ADDITIONAL TERMS

535 **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
536* Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A.  Condominium Rider | ☐ M.  Defective Drywall | ☐ X.  Kick-out Clause |
| ☒ B.  Homeowners' Assn. | ☐ N.  Coastal Construction Control Line | ☐ Y.  Seller's Attorney Approval |
| ☐ C.  Seller Financing | ☐ O.  Insulation Disclosure | ☐ Z.  Buyer's Attorney Approval |
| ☐ D.  Mortgage Assumption | ☐ P.  Lead Based Paint Disclosure | ☐ AA. Licensee-Personal Interest in |
| ☐ E.  FHA/VA Financing | (Pre-1978 Housing) | Property |
| ☐ F.  Appraisal Contingency | ☐ Q.  Housing for Older Persons | ☐ BB. Binding Arbitration |
| ☐ G.  Short Sale | ☐ R.  Rezoning | ☒ Other ADDENDUM 1 |
| ☐ H.  Homeowners'/Flood Ins. | ☐ S.  Lease Purchase/ Lease Option | |
| ☐ I.   RESERVED | ☐ T.  Pre-Closing Occupancy by Buyer | |
| ☐ J.   Interest-Bearing Acct. | ☐ U.  Post-Closing Occupancy by Seller | |
| ☐ K.  RESERVED | ☐ V.  Sale of Buyer's Property | |
| ☐ L.  RESERVED | ☐ W.  Back-up Contract | |

537* **20. ADDITIONAL TERMS:** _____
538 1. All Contracts must be approved by the United States Bankruptcy Court for the Southern District of Florida
539 2. All disputes relating to this Contract or sale of the property shall be heard by the United States Bankruptcy Court for the
540 Southern District of Florida.
541 3. Property is being sold "As-is, Where-is"
542
543
544
545
546
547
548
549
550
551
552
553

554 ### COUNTER-OFFER/REJECTION

555* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver
556 a copy of the acceptance to Seller).
557* ☐ Seller rejects Buyer's offer.

558 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF**
559 **AN ATTORNEY PRIOR TO SIGNING.**

560 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

561 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and*
562 *conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be*
563 *negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

Buyer's Initials _M H_ _____     Page 10 of 11     Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 028402-400141-3289429

formsimplicity

564 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE
565 COMPLETED.
566
567
568* Buyer: _____     Date: 11/19/2014
569 Michael C. Hall - Director of Real Estate & Acquisitions
570
571
572
573* Buyer: _____     Date: _____
574
575
576
577
578* Seller: _____     Date: _____
579
580
581
582
583* Seller: _____     Date: 11/01/14
584
585 Buyer's address for purposes of notice          Seller's address for purposes of notice
586* _____     _____
587* _____     _____
588* _____     _____
589
590 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to
591 compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
592 disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
593 and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed
594 funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to
595 Cooperating Brokers.
596
597*     Gabriel Koch - FMD Group                          Michael Mehdipour
598 **Cooperating Sales Associate, if any**          **Listing Sales Associate**
599
600*     FMD Group - 2.5%                           Illustrated Properties R E - 2.5%
601 **Cooperating Broker, if any**                   **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 028402-400141-3289429

formsimplicity

**Addendum 1 to "AS IS" Residential Contract For Sale and Purchase dated _____, between**

**(Seller)** Trustee Kenneth A. Welt, for the estate **and IHS PROPERTY FLORIDA , L.P. A Delaware Limited Partnership(Buyer)**

**Concerning the property at _____ 544 SW 183RD WAY, Pembroke Pines FL 33029 _____, Florida _____.**

**Buyer and Seller agree to make the following terms and conditions part of the contract:**

Notwithstanding anything contained in the Contract to the contrary, the following terms and conditions shall supersede and control:

1. **Inspection/Investigations/Materials Due From Seller**: Buyer shall have XXXXX 7 business days (business days shall    exclude state and federal holidays, Saturdays and Sundays) beginning the first business day after the Effective Date  and concluding at 11:59 p.m. on the XXXXXXXX business day thereafter (the "Inspection Period") to conduct any  and all inspections of the Property that Buyer desires (collectively, the "Investigations") to allow Buyer to determine,  in Buyer's sole and absolute discretion, whether Buyer desires to purchase the Property; provided, however, that the  Inspection Period may be extended as provided below. Buyer shall have the right to terminate this Contract anytime  during the Inspection Period.

Within four (4) business days after the Effective Date (the "Access Deadline"), Seller shall provide a representative of Seller to be present and provide access for Buyer's Investigations. The Inspection Period shall be automatically  extended by one (1) business day for each day beyond the Access Deadline until Seller has fulfilled Seller's duty   under the immediately preceding sentence.

2. **Earnest Money:** Buyer's earnest money deposit shall be made in the form of a bank wire and shall be sent by Buyer   to Escrow Agent within one (1) business day following the completion of the Inspection Period.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

4. **Closing Agent:** OS National Title or Trident Title, a Florida licensed title agency, or another closing agent selected by Buyer & Seller shall conduct the Closing. Buyer will pay for all reasonable and customary closing fees as listed in Paragraph  9(b) of the contract necessary for the closing agent designated by Buyer, to conduct the Closing. Buyer shall not pay  any applicable costs listed in Paragraph 9(a) of the Contract, except Owner's Policy and title search charges.

5. **No Restrictions on Leasing the Property:** Buyer is purchasing the Property solely for investment purposes, and the  Property will be leased to a third party by Buyer after Buyer acquires the Property. If there are any restrictions,  limitations or prohibitions on the ability to lease the Property currently or after the Closing, including but not limited  to restrictions, limitations or prohibitions pursuant to a homeowners association ("HOA"), contract, declaration, law,  rule or ordinance, then Buyer shall have the right to terminate this Contract.

6. **HOA Fees:** It is Seller's responsibility to advise Buyer of any money owed by Seller to a HOA. HOAs sometimes  charge fees to release such information. If Seller and/or the Property is subject to a HOA, and Buyer advances the  HOA fee for releasing the information, then Seller agrees that Buyer shall be reimbursed for the HOA fee from the  sale proceeds at the Closing, if any.

7. **Buyer's Default:** If Buyer defaults under this Contract, Seller's exclusive remedy shall be to retain the Deposit as  liquidated damages. Neither the listing broker, the cooperating broker nor anyone else shall have a claim against  Buyer as a result of Buyer's default.

8. **Assignment:** Buyer shall be entitled to assign this Contract to an affiliate of Buyer with notice to the Seller.  Any assignee of Buyer shall be entitled to all the right and power of Buyer hereunder. Seller shall not be entitled to  assign this Contract without the prior written consent of Buyer.

9. **Seller's Failure to Deliver Good and Marketable Title or Title Insurance:** If Seller fails to provide good and  marketable title to the Property within thirty (30) days from the end of the Inspection Period, then Buyer may terminate  the Contract. A condition to Buyer's obligation to purchase the Property shall be the delivery to Buyer of an owner's  title insurance policy on the Property issued at regular rates by a title insurance company licensed to do business in  Florida, and subject only to standard exceptions, and if such a policy cannot be delivered within thirty (30) days from  the end of the Inspection Period by the Closing Agent conducting the Closing, then Buyer shall have the right to  terminate the Contract. Buyer shall proceed with diligence to obtain such an owner's title policy. Within one (1)



1

business day of the end of the Inspection Period, Seller shall furnish Buyer with a copy of Seller's or a prior owner's  policy of title insurance.

10.    **Buyer Exercises Right to Terminate the Contract**: In the event Buyer exercises its right to terminate the Contract  under any one or more of the sections and provisions in this Contract, then Buyer shall provide notice to all the other  parties, the Escrow Agent shall immediately return to Buyer the Deposit without deduction or offset, this Contract  shall terminate in all other respects without any further obligations of Seller, Buyer, and Broker(s), and neither Seller,  Buyer, Broker(s) nor the Holder shall have any further rights, liabilities or obligations to one another under this  Contract or otherwise.

11.    **No New Lease, No Amendment, No Partial Payment, Disclosure of Action Against Tenant**: After the Effective  Date, Seller shall (a) not enter a lease or amendment of a current lease for the Property, (b) not accept partial payment  of rent, and (c) fully disclose any legal action taken by Seller against a tenant occupying the Property, including but  not limited to eviction and dispossessory actions. If Seller shall fail to fulfill its obligations in the immediately  preceding sentence, Buyer shall have the right to terminate the Contract.

12.    **Seller's Deliveries:** Within three (3) business days after the Effective Date (the "Deliveries Deadline"), Seller shall  deliver or otherwise make available to Buyer a true and correct copy of the documents and materials described in A.,  B., C. and D. below (the "Inspection Materials"):

    **A.** All current title examinations, which shall be delivered without representation or warranty of any kind, complete  photocopies of all title policies, surveys and title exceptions with respect to the Property within the possession or  control of Seller.

    **B.** Current lease, tenant contact information, documentation related to government-subsidized rentals, rent rolls,  security deposit information (including but not limited to move-in inspections forms), and photocopies of permits or   documents concerning permits affecting the Property.

    **C.** If a Property is leased or occupied, a completed Tenant Certificate signed and dated by the tenant(s) and sellers of such  Property, in the form attached hereto as **Exhibit A** and by this reference made a part hereof.

**SELLER: INITIAL ONE**

    _____The Property IS currently leased or IS non-owner occupied and subject to paragraph 12.C. above and  Exhibit A

OR

    _____The Property IS NOT currently leased, IS owner occupied, or IS vacant and is not subject to paragraph 12.C. above.

    **D.** A writing signed and dated by the Seller detailing (i) if the Property is in a historic district and (ii) if the Property  is subject to, or governed by, a HOA and the annual fee and dues of the HOA for the Property.

* The Inspection Period shall be automatically extended by one (1) business day for each day beyond the  Deliveries Deadline until Seller has delivered the all of the Inspection Materials to Buyer.

Subsequent to the expiration of the Inspection Period, Buyer shall have the right to terminate this Agreement if Buyer  determines (a) there are material inconsistencies between leases of the Properties, the Tenant Certificates and the  Seller's Representation and Warranties, or (b) the information provided in the writing in paragraph D. immediately  above is not acceptable to Buyer.

13.    **Permits:** Seller represents and warrants that no improvements have been made to the Property which were made  without required permits or made pursuant to permits which have not been properly closed or which have expired.  It is Seller's duty to disclose permit issues to Buyer. Buyer shall obtain a municipal lien search for the Property.  Seller  shall be responsible for closing any open or expired permits, or for obtaining any permits, including but not limited to   occupancy permits, required by local ordinance, or other applicable law, as revealed on the municipal lien search or   otherwise. Buyer shall not be required to expend, or become obligated to expend, any money necessary to close-out  or obtain permits, or to improve or spend money to improve the Property in order to obtain required permits or close   open or expired permits.

If Seller is unable to (a) obtain all permits required by law or (b) close out all open or expired permits, on or before  20 days following the end of the Inspection Period, the Closing shall be extended as provided in Paragraph 3 above  or Buyer may terminate the Contract.

| Buyers Signature: | Date: | | Sellers Signature: | Date: |
|---|---|---|---|---|
| _Michael C. Hall - Director of Real Estate_ | 11/19/2014 | | | 11/01/14 |